UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

SARAH FIORE,

                    Plaintiff,

          v.

NORTH SHORE RADIATION THERAPY and
NORTHWELL HEALTH, INC.,

                    Defendants.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
24-CV-3164 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Sarah Fiore commenced the above-captioned action against Defendants North Shore Radiation Therapy and Northwell Health Inc. on April 28, 2024, asserting claims of disability discrimination, failure to accommodate, and retaliation under both the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"). (Compl., Docket Entry No. 1.) On January 16, 2025, Plaintiff filed an Amended Complaint asserting the same claims. (Am. Compl., Docket Entry No. 28.)

On June 2, 2025, Defendants moved jointly to dismiss the Amended Complaint in its entirety for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons explained below, the Court grants Defendants' motion to dismiss.

---

[1] (Not. of Defs.' Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 32; Aff. of Lisa M. Griffith, Esq. in Supp. of Defs.' Mot., Docket Entry No. 33; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 34; Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), Docket Entry No. 35; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 36.)

## I.   Background

Plaintiff is a resident of New York, Suffolk County and was employed by Defendants at all relevant times until her termination on September 30, 2021.[2]  (Am. Compl. ¶ 44.)  Defendants are New York domestic not-for-profit medical corporations located at 270 Pulaski Road, Greenlawn, New York.  (*Id.* ¶¶ 45–48.)

### a.   COVID-19 vaccine mandates

Beginning on August 2, 2021, Defendants begin requiring their employees to either (1) test weekly for COVID-19, or (2) become vaccinated.  (*Id.* ¶ 4.)  If an employee chose to proceed with weekly testing, a negative test was required to be permitted to work.  (*Id.*)  Plaintiff alleges Defendants did not require their employees to test for COVID-19 or become vaccinated until August 2, 2021.  (*Id.* ¶ 3.)

---

[2]  In deciding a Rule 12(b)(6) motion, "the district court is normally required to look only to the allegations on the face of the complaint," but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice."  *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *see Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025) (citations omitted).  In addition, "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *see Hudson Shore Assocs. LP v. New York*, 139 F.4th 99, 104 n.1 (2d Cir. 2025) (citations omitted); *Goe v. Zucker*, 43 F.4th 19, 29 (2d Cir. 2022) (first citing *Territory of Alaska v. Am. Can Co.*, 358 U.S. 224, 226–27 (1959); and then citing *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003)); *see also Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (district courts "may consider public records that may be judicially noticed in ruling on motions" (quoting *Pani*, 152 F.3d at 75)); *McConkey v. Churchill Sch. & Ctr.*, No. 24-CV-6091, 2025 WL 2062195, at *4 n.1 (S.D.N.Y. July 23, 2025) ("Though the [c]ourt may take judicial notice of 'documents in the public record at the [m]otion [t]o [d]ismiss stage, it considers them only to establish their existence and legal effect, or to determine what statements they contained not for the truth of the matters asserted.'" (citation omitted)).  The Court may also take judicial notice of "documents retrieved from official government websites."  *Warner v. Garland*, No. 20-2197, 2023 WL 3220459, at *1 n.2 (2d Cir. May 3, 2023) (summary order) (quoting *Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 299 n.7 (2d Cir. 2022)).

On August 26, 2021, New York's Department of Health adopted an emergency rule directing hospitals, nursing homes, hospices, adult care facilities, and other identified healthcare entities to "continuously require" certain employees to be fully vaccinated against COVID-19 beginning on September 27, 2021 for "general hospitals" and nursing homes, and on October 7, 2021 for all other "covered entities" as defined by Title 10 of the New York Compilation of Codes, Rules and Regulations, Section 2.61 ("Section 2.61"). (*Id.* ¶ 5; *see* Section 2.61 New York State Vaccine Mandate, annexed to Am. Compl. as Ex. 1, Docket Entry No. 28-1.) *See* 10 N.Y. Comp. Codes R. & Regs. § 2.61 (2021) (repealed Oct. 4, 2023); *We The Patriots USA, Inc. v. Hochul* ("*We The Patriots I*"), 17 F.4th 266, 274 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) (per curiam), *cert. denied sub nom.*, *Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022). Section 2.61 provided a medical exemption from vaccination:

> If any licensed physician or certified nurse practitioner certifies that immunization with COVID-19 vaccine is detrimental to the health of member of a covered entity's personnel, based upon a pre-existing health condition, the requirements of this section relating to COVID-19 immunization shall be inapplicable only until such immunization is found no longer to be detrimental to such personnel member's health. The nature and duration of the medical exemption must be stated in the personnel employment medical record, or other appropriate record, and must be in accordance with generally accepted medical standards, (see, for example, the recommendations of the Advisory Committee on Immunization Practices of the U.S. Department of Health and Human Services [("ACIP")][3], and any

---

[3] ACIP published generally accepted medical standards for COVID-19 vaccination medical exemptions. (New York Dep't of Health, *Frequently Asked Questions (FAQs) Regarding the August 26, 2021 – Prevention of COVID-19 Transmission by Covered Entities Emergency Regulation* ("FAQ") 5, annexed to Defs.' Mem. as Ex. 1, Docket Entry No. 34-1.) The FAQ also states that the following conditions were "precautions" to COVID-19 vaccines:

> [1] Current moderate to severe acute illness [—] This is a temporary precaution, until the individual has recovered[;]
> [2] History of an immediate allergic reaction to any other (not COVID-19) vaccine or injectable therapy (excluding allergy shots)[;]

3

> reasonable accommodation may be granted and must likewise be documented in such record.

(Am. Compl. ¶ 7 (emphasis omitted).)  *See We The Patriots I*, 17 F.4th at 297–98 (quoting 10 N.Y. Comp. Codes R. & Regs. § 2.61(d)(1)).  Section 2.61 also permitted covered entities to grant exemptions and required them to document exemptions.  (*Id.* ¶ 8.)  *See We The Patriots I*, 17 F.4th at 297–98 (quoting 10 N.Y. Comp. Codes R. & Regs. § 2.61(d)(1)).

Defendants implemented a mandatory COVID-19 vaccination policy to achieve compliance with Section 2.61 that required all healthcare workers to receive their first dose of a COVID-19 vaccine by September 27, 2021.  (*Id.* ¶ 6.)

### b.  Plaintiff's employment and termination

Plaintiff alleges she has "a profound autoimmune disease, [called] relapsing polychondritis" ("Relapsing Poly"), (*id.* ¶ 13 (alteration in original) (quoting Vaccine Exemption Request and Dr. Gee's First Ltr. ("Dr. Gee's First Ltr."), annexed to Am. Compl. as Ex. 2, Docket Entry No. 28-2)), which "causes inflammation and deterioration of cartilage," (*id.* (citation omitted)).  "Relapsing Poly can cause hearing loss, pain and redness in the eyes, and

---

> [3] History of myocarditis or pericarditis after receiving the first dose of an mRNA COVID-19 vaccine[; and]
> [4] A contraindication to one type of COVID-19 vaccine (e.g., mRNA COVID-19 vaccines) have precautions to another type of COVID-19 vaccine (e.g., Janssen/Johnson & Johnson vaccine).

(*Id.* at 6 (emphasis omitted).)  The Centers for Disease Control and Prevention ("CDC") stated that most people with a precaution "'can and should be administered vaccine,' after conducting a risk assessment with a healthcare provider."  *We The Patriots USA, Inc. v. Hochul* ("*We The Patriots I*"), 17 F.4th 266, 289 n.28 (2d Cir. 2021) (quoting Centers for Disease Control & Prevention, *Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Approved or Authorized in the United States: Contraindications and Precautions* (Oct. 25, 2021), https://www.cdc.gov/vaccines/covid-19/clinical-considerations/covid-19-vaccines-us.html#Contraindications)), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) (per curiam), *cert. denied sub nom.*, *Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022).

Plaintiff also attached the FAQ as an Exhibit.  (*See* FAQ, annexed to Pl.'s Opp'n as Ex. 1, Docket Entry No. 35-1.)  Because the exhibit is not paginated, the Court refers to the page numbers assigned by the electronic case filing system.

difficulty breathing" and is "a disability that impairs multiple major life activities[,] [s]pecifically breathing, seeing, and hearing." (*Id.*)  Plaintiff alleges Relapsing Poly constitutes a disability as defined by the ADA.  (*Id.* ¶ 14 (citing 42 U.S.C. § 12102(4)(D)).)

On September 2, 2021, Plaintiff submitted a request for a medical exemption to Defendants' COVID-19 vaccine mandate with a letter from Dr. Christopher Gee attesting to Plaintiff's disease and stating in relevant part:

> [Plaintiff] has been doing well but has had severe exacerbations with profound swelling and facial and torso disfiguration from her disease which have been triggered from immunizations in the past. It is for this reason that she has not received the COVID vaccine and is medically contraindicated as this could cause a significant flare and trigger her underlying disease process . . . . A COVID vaccine could spark a flare for [Plaintiff] that could last years.

(*Id.* ¶¶ 10, 15; Dr. Gee's First Ltr. 2.)  Plaintiff alleges that Dr. Gee's letter "certified that immunization with the COVID-19 vaccine is detrimental to the health of Plaintiff" and "satisfies the requirements for a medical exemption pursuant to Section 2.61(d)(1)."  (Am. Compl. ¶ 16.)

On September 22, 2021, Defendants denied Plaintiff's medical exemption request because "[e]xemption decisions are based on known COVID-19 vaccine safety risks," and Defendants found Plaintiff's "stated reason for a medical exemption [was] not a contraindication to COVID-19 vaccination."  (*Id.* ¶ 17; Exemption Denial Ltr., annexed to Am. Compl. as Ex. 3, Docket Entry No. 28-3.)  In Defendants' exemption denial letter, they advised Plaintiff she could submit supplemental documentation by September 24, 2021, and stated vaccination was "a condition of continued employment."  (Exemption Denial Ltr.)

Plaintiff submitted to Defendants a second letter from Dr. Gee dated September 23, 2021 that "certified [for the second time] that immunization with the COVID-19 vaccine could result in a life threatening reaction."  (Am. Compl. ¶¶ 17–18; Dr. Gee's Second Ltr., annexed to Am.

5

Compl. as Ex. 4, Docket Entry No. 28-4.)  The second letter[4] reiterated Plaintiff's Relapsing Poly

symptoms and stated in relevant part:

> [Plaintiff] has had triggers and flares of her disease from prior
> vaccinations including the flu vaccine.  Although she has not
> received a COVID vaccine it is not unlikely, as the flu vaccine has
> triggered her disease, that the COVID vaccine may as well trigger
> her [Relapsing Poly] with possible subsequent throat closing.
> [Plaintiff] has distinct possibility of having a severe life-threatening
> reaction to the COVID vaccine.

(Am. Compl. ¶ 17; Dr. Gee's Second Ltr.)  Plaintiff alleges that instead of providing a medical

exemption to the COVID-19 and a reasonable accommodation, Defendants discriminated against

Plaintiff because of her disability and terminated her employment.  (Am. Compl. ¶¶ 17, 26–35,

38.)  Plaintiff also alleges that Defendants "retaliated against her for complaining about

discrimination."  (*Id.* ¶ 38.)  Based on these allegations, Plaintiff asserts claims of disability

discrimination under the ADA, (*id.* ¶¶ 52–55), and NYSHRL, (*id.* ¶¶ 68–70); failure to

accommodate under the ADA, (*id.* ¶¶ 56–62), and NYSHRL, (*id.* ¶¶ 71–76); and retaliation

under the ADA, (*id.* ¶¶ 63–67), and NYSHRL, (*id.* ¶¶ 77–79).  Plaintiff seeks injunctive and

declaratory relief, compensatory and punitive damages, and other legal and equitable relief.  (*Id.*

¶ 40.)

---

[4]  Plaintiff alleges that she "received a [third] letter from a Rheumatologist, Dr. Douglas Mund" that stated, "[i]t is my medical opinion that [Plaintiff] should not receive Covid-19 vaccination.  She has had severe allergic reaction to other prior vaccinations including rash and respiratory compromise."  (Am. Compl. ¶ 19; Dr. Mund's Ltr., annexed to Am Compl. as Ex. 5, Docket Entry No. 28-5.)  Plaintiff does not state the date she "received" the letter or when/if she provided the letter to Defendants, (*see* Am. Compl. ¶ 19); however, the letter is dated January 12, 2022, (Dr. Mund's Ltr.).  Defendants argue that Plaintiff obtained this letter three and a half months after her employment ended, Plaintiff "does not suggest she ever provided it to Defendants," and "[i]n any case, . . . [the letter] does not identify any recognized contraindication to the COVID-19 vaccine."  (Defs.' Mem. 5 n.4.)  Because the letter from Dr. Mund is dated several months after Plaintiff's termination, and Plaintiff does not plead that she provide the letter to Defendants as part of her request for medical exemption, the Court does not consider the letter from Dr. Mund.

### c.    Procedural background

Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued a right-to-sue notice on February 1, 2024.  (*Id.* ¶ 49; *see* Pl.'s Right to Sue Ltr., annexed to Am. Compl. as Ex. 6, Docket Entry No. 28-6.)  As a result, Plaintiff alleges she "fully exhausted her administrative remedies and is entitled to file in [ ] district court."  (Am. Compl. ¶ 51.)

Plaintiff filed her Complaint on April 28, 2024, (Compl.), within 90 days of the receipt of the EEOC notice, (Am. Compl. ¶ 50).  Defendants filed a motion to dismiss the Complaint on December 23, 2024.  (Defs.' Not. of Mot. to Dismiss, Docket Entry No. 23; Defs.' Corrected Mem. in Supp. of Defs.' Not. of Mot. to Dismiss, Docket Entry No. 27.)  In lieu of filing an opposition brief to the motion to dismiss, Plaintiff filed an Amended Complaint.  (Am. Compl.; *see* Order dated Jan. 17, 2025.)  After the filing of the Amended Complaint, the Honorable Nusrat J. Choudhury dismissed Defendants' motion to dismiss the Complaint as moot.  (Order dated Jan. 17, 2025.)  Defendants then moved to dismiss the Amended Complaint, which the parties fully briefed and filed on June 2, 2025.  (*See* Order dated Mar. 24, 2025; Defs.' Mem.; Pl.'s Opp'n; Defs.' Reply.)

On April 13, 2026, the case was reassigned to the undersigned.  (Order dated Apr. 13, 2026.)

## II.    Discussion

### a.    Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must 'construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor.'"  *Singh v. Deloitte LLP*, 123 F.4th 88, 93 (2d Cir. 2024) (quoting *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d

7

Cir. 2021)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) ("[The Second Circuit] review[s] *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002))). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Yerkyn v. Yakovlevich*, 164 F.4th 224, 231 (2d Cir. 2026) (quoting *id.*). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see Knapp v. Barclays PLC*, 171 F.4th 166, 170 (2d Cir. 2026) (quoting same); *Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Matson*, 631 F.3d at 63); *see also Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 544 (2d Cir. 2024) ("[T]he plaintiff's allegations must enable the court to reasonably infer that the defendant is liable for the alleged misconduct." (citing *Iqbal*, 556 U.S. at 678)), *cert. denied*, 146 S. Ct. 880 (2025); *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 99 (2d Cir. 2024) ("[S]urviv[ing] a motion to dismiss . . . requires 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Iqbal*, 556 U.S. at 678)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see Roe*, 91 F.4th at 651 ("Although all factual allegations contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Iqbal*, 556 U.S. at 678)).

8

**b.    Plaintiff fails to state a claim for disability discrimination in violation of the ADA**

Defendants argue, first, that Plaintiff's disability discrimination claim fails because Plaintiff does not plausibly allege any inference of discrimination because the Amended Complaint "includes no allegations whatsoever to suggest that Defendants discriminated against her *because of* her purported disability . . . [such as] ma[king] discriminatory comments, [or] . . . provid[ing] exemptions from its COVID-19 vaccination requirement (as mandated by the State of New York) to non-disabled employees." (Defs.' Mem. 7.)  Second, Defendants argue that Plaintiff was no longer qualified for her position "by law, per [Defendants'] policy, and as a matter of health and safety" after refusing to be vaccinated against COVID-19, and therefore Plaintiff cannot maintain a claim for disability discrimination on that basis.  (*Id.* at 8.)  Third, Defendants argue that Plaintiff abandoned her disability discrimination claim because her opposition fails to oppose their arguments.  (Defs.' Reply 4.)

Plaintiff does not address her ADA disability discrimination claim in her opposition brief and only presents arguments regarding her claims for failure to accommodate.  (*See generally* Pl.'s Opp'n.)  The Court nevertheless addresses this claim, even though abandoned by Plaintiff.

The ADA "makes it unlawful for a covered employer to 'discriminate against a qualified individual on the basis of disability.'"  *Stanley v. City of Sanford*, 606 U.S. 46, 51 (2025) (quoting 42 U.S.C. § 12112(a)); *see Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 179 (2012) ("The ADA prohibits an employer from discriminating against a qualified individual on the basis of disability." (citing 42 U.S.C. § 12112(a))); *Yerdon v. Poitras*, 120 F.4th 1150, 1156 (2d Cir. 2024) (explaining that the ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability" (alteration in original) (quoting same)).  "Claims alleging disability discrimination in violation of

the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [ ](1973)." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009)); *see Parker v. Israel Disc. Bank of N.Y., Inc.*, No. 24-688, 2025 WL 1779219, at *1 (2d Cir. June 27, 2025) (summary order) ("ADA and [New York City Civil Rights Law 'NYCHRL'] discrimination claims are subject to the burden-shifting framework set forth in [*McDonnell Douglas*, 411 U.S. 792]." (citing *id.*)); *Bey v. City of New York*, 999 F.3d 157, 165 (2d Cir. 2021) ("ADA claims are subject to the burden-shifting framework articulated in [*McDonnell Douglas*, 411 U.S. 792].""); *Forrester v. Prison Health Servs., Inc.*, 651 F. App'x 27, 28 (2d Cir. 2016) (first citing *McMillan*, 711 F.3d at 125; and then citing *Cortez v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015)).  There are three steps to this burden-shifting analysis: (1) "[a] plaintiff must establish a *prima facie* case"; (2) "the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge"; and (3) "the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Blanton v. Educ. Affiliates, Inc.*, No. 21-1221, 2022 WL 1505124, at *2 (2d Cir. May 12, 2022) (summary order) (alteration in original) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)); *Genova v. Cnty. of Nassau*, 851 F. App'x 241, 242 (2d Cir. 2021) (quoting same); *see Parker*, 2025 WL 1779219, at *1 (explaining the burden-shifting framework (citing *McDonnell Douglas*, 411 U.S. at 802)); *Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 145–46 (2d Cir. 2024) (same (citing *McDonnell Douglas*, 411 U.S. at 802–07)).

"To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential

10

functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020) (citing *Sista*, 445 F.3d at 169); *see Daly v. Westchester Cnty. Bd. of Legislators*, No. 23-1220, 2024 WL 3264125, at *1 (2d Cir. July 2, 2024) (summary order) (citing *id.*); *Gorbea v. Verizon N.Y. Inc.*, No. 20-3486, 2021 WL 4851389, at *2 (2d Cir. Oct. 19, 2021) (summary order) (quoting same); *Jones v. N.Y.C. Transit Auth.*, 838 F. App'x 642, 643–44 (2d Cir. 2021) (quoting same); *Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 48–49 (2d Cir. 2014) (quoting *McMillan*, 711 F.3d at 125); *Kinneary v. City of New York*, 601 F.3d 151, 155–56 (2d Cir. 2010) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)); *Donkor v. Weill Cornell Med. Coll.*, No. 23-CV-369, 2025 WL 639313, at *3 (S.D.N.Y. Feb. 27, 2025) (quoting same); *see also Knope v. Garland*, No. 20-3274, 2021 WL 5183536, at *2 (2d Cir. Nov. 9, 2021) (summary order) (outlining requirements for a *prima facie* case under the ADA (quoting *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019))). A plaintiff's burden at this stage is "minimal." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 270 (2d Cir. 2023); *see Trivedi v. St. Peter's Health Partners Med. Assocs., P.C.*, No. 23-7608, 2024 WL 5087524, at *1 (2d Cir. Dec. 12, 2024) (summary order) ("[The plaintiff] bears the initial burden of establishing a *prima facie* case, a burden that 'has been frequently described as minimal.'" (quoting *id.*)); *Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 468 (2d Cir. 2019) ("[A] plaintiff's burden to establish an initial *prima facie* case is, by design, 'minimal and de minimis.'" (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005))); *Holcomb v. Iona College*, 521 F.3d 130, 139 (2d Cir. 2008) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). "At the pleading stage [of an ADA discrimination claim], a plaintiff need only 'give plausible support to a minimal inference of discriminatory motivation.'" *Lewis v. Redline Hockey, LLC*, No. 24-1342, 2025 WL 2629705, at *2 (2d Cir. Sep. 12, 2025) (summary order) (quoting *Littlejohn v. City of*

11

*New York*, 795 F.3d 297, 311 (2d Cir. 2015)); *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting same).

The parties do not dispute that Defendants are subject to the ADA or that Plaintiff suffers from a disability as defined by the ADA, but dispute whether Plaintiff was qualified to perform her job and suffered an adverse employment action because of her disability.

Plaintiff fails to allege facts that give rise to an inference of discrimination based on her alleged disability of Relapsing Poly. Plaintiff's only allegation of discrimination in her Amended Complaint relates to Defendants' alleged failure to provide a medical exemption or accommodation to COVID-19 vaccination, (*see generally* Am. Compl.), which supports that Defendants terminated Plaintiff because she was no longer qualified for her position due to her failure to be vaccinated, not *because of* her Relapsing Poly condition. Plaintiff does not allege that Defendants treated non-vaccinated non-disabled employees more favorably or that Defendants harbored animus. Plaintiff's allegations are insufficient to support an inference of discrimination under the ADA. *See Kosiba v. Cath. Health Sys. of Long Island, Inc.*, No. 23-6, 2024 WL 3024652, at *1 (2d Cir. June 17, 2024) (summary order) (finding the plaintiff failed to establish an ADA discrimination claim because the defendant's COVID-19 vaccination policy "required *all* employees whose jobs brought them into contact with other staff, patients, or residents to comply" and the plaintiff "was not singled out" because of a perceived disability (citation omitted)); *Sorel v. N.Y.C Dep't of Educ.*, No. 24-CV-7225, 2026 WL 879415, at *5 (E.D.N.Y. Mar. 31, 2026) (finding the plaintiff failed to state an ADA discrimination claim because "[the p]laintiff does not allege that [the d]efendants criticized his job performance in degrading terms, that [the d]efendants made comments about other disabled persons, that [the d]efendants gave more favorable treatment to non-disabled employees, or that he was replaced by a non-disabled employee"), *appeal docketed*, No. 26-1174 (2d Cir. Apr. 30, 2026); *Jeter v.*

12

*Mount Sinai Health Sys.*, No. 23-CV-7889, 2026 WL 818735, at *8 (S.D.N.Y. Mar. 25, 2026) (finding the plaintiff failed to plead an inference of discrimination because the defendant-hospital implemented its COVID-19 vaccine policy that affected all employees before the plaintiff informed the defendant of her purported disability and "therefore it is not reasonable to infer that there was a causal connection between her alleged disability and the termination of her employment"); *Moore v. City of New York*, No. 15-CV-6600, 2017 WL 35450, at *19 (S.D.N.Y. Jan. 3, 2017) ("[Because the plaintiff did] not plead a single fact about individual comparators or other specific evidence of disparate treatment . . . [his] pleadings [ ] fail[ed] to raise his ADA claims beyond the level of speculation and cannot support a plausible inference of disability discrimination in order to survive a motion to dismiss."), *report and recommendation adopted*, 2017 WL 1064714 (S.D.N.Y. Mar. 20, 2017); *see also D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *4 (2d Cir. Nov. 17, 2023) (summary order) (affirming district court decision and holding the plaintiff failed to raise an inference of discrimination where she alleged she was terminated for refusing to be vaccinated against COVID-19, and not because of her protected class).

Moreover, Defendants terminated Plaintiff since she was no longer qualified for her position because she was not vaccinated, not *because of* her disability. "Vaccination [against COVID-19] is a condition of employment in the healthcare field." *We The Patriots I*, 17 F.4th at 294; *see Jeter*, 2026 WL 818735, at *9 (finding the plaintiff failed to allege causal connection between her purported disability and her termination to support an inference of discriminatory because "[the p]laintiff fails to allege that but for her alleged disability, she would not have been fired. Instead, the allegations in the [c]omplaint make clear that [the p]laintiff was terminated for a legitimate, non-discriminatory reason: because she refused to comply with the [vaccine m]andate after not receiving an exemption." (citation omitted)); *Brown v. S. Shore Univ. Hosp.*,

13

762 F. Supp. 3d 191, 210 n.13 (E.D.N.Y. 2025) (collecting cases); *Abramov v. Northwell Health Sys.*, No. 22-CV-6687, 2024 WL 4276171, at *10 (E.D.N.Y. Sep. 24, 2024) (holding the plaintiff's ADA claim failed because her "choice to not get vaccinated (without a medical exemption) ma[de] her *per se* unqualified for her position"), *aff'd sub nom.*, *Braccica v. Northwell Health Sys.*, No. 24-2665, 2025 WL 2610704 (2d Cir. Sep. 10, 2025) (summary order), *petition for cert. filed*, No. 25-963 (U.S. Feb. 17, 2026); *D'Cunha v. Northwell Health Sys.*, No. 22-CV-988, 2023 WL 2266520, at *6 (S.D.N.Y. Feb. 28, 2023) (holding that a medical resident who declined COVID-19 vaccination on medical and religious grounds was not plausibly qualified for her position once her employer's vaccine requirement came into effect), *aff'd*, No. 23-476, 2023 WL 7986441 (2d Cir. Nov. 17, 2023) (summary order); *see also Bandalos v. Stony Brook Univ. Med. Ctr.*, No. 23-CV-135, 2025 WL 2402828, at *7 (E.D.N.Y. Aug. 18, 2025) ("[W]here a hospital imposed a COVID-19 vaccination requirement as an employment requirement and an employee failed to comply with that requirement, the employee was not qualified for their position for purposes of bringing a Title VII employment discrimination claim." (quoting *Brown*, 762 F. Supp. 3d at 210 n.13)), *appeal docketed*, No. 25-2284 (2d Cir. Nov. 22, 2025).

Further, Plaintiff abandoned her claim for failing to address Defendants' arguments in their motion to dismiss. *See Linares v. Herrera*, No. 22-CV-7272, 2025 WL 2720789, at *5 (S.D.N.Y. Sep. 24, 2025) (finding the plaintiff abandoned her claim for failing to address the defendant's motion to dismiss arguments (citing *Youmans v. Schriro*, No. 12-CV-3690, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013))), *appeal dismissed*, No. 25-2695 (2d Cir. Dec. 3, 2025); *Flores v. City of New York*, No. 21-CV-5861, 2025 WL 2548841, at *10 (S.D.N.Y. Sep. 3, 2025) (same); *Campbell v. Whole Foods Mkt. Grp.*, 516 F. Supp. 3d 370, 393 (S.D.N.Y. 2021) ("Plaintiff has abandoned this claim by failing to brief the issue in response to Defendant's

14

motion to dismiss."); *Youmans*, 2013 WL 6284422, at *5 ("A plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitutes an abandonment of those claims." (collecting cases)).

Therefore, the Court dismisses Plaintiff's claim for disability discrimination under the ADA because Plaintiff fails to allege facts that give rise to an inference of discrimination and because Plaintiff abandoned her claim by failing to address Defendants' arguments in their motion to dismiss. *Lewis*, 2025 WL 2629705, at *2 (dismissing the plaintiff's claims, *inter alia*, because the plaintiff "did not plausibly suggest even a minimal inference of discrimination").

### c. Plaintiff fails to state a claim for failure to accommodate in violation of the ADA

#### i. Defendants' arguments

Defendants argue that they had a process in place for handling vaccine exemption requests in accordance with the New York state mandate, but Plaintiff's requests for exemption were objectively unreasonable as matter of law. (Defs.' Mem. 9.) First, Defendants argue Plaintiff's alleged condition of Relapsing Poly is not one of the "only two contraindications that would support an exemption to the [vaccine] [m]andate" — "(1) a severe allergic reaction to a prior dose or component of the COVID-19 vaccine or (2) an immediate reaction or diagnosed allergy to a previous dose or component of the vaccine" — neither of which was identified in the physician's letters submitted by Plaintiff. (Defs.' Reply 1–2.) Defendants contend that Plaintiff's first letter from Dr. Gee stated COVID-19 vaccination could cause a "flare" of Relapsing Poly, and Dr. Gee's second letter stated a flu vaccine had previously triggered Plaintiff's Relapsing Poly; however, neither of those requests fell into the contraindications identified by ACIP in the generally accepted medical standards regarding contraindications. (Defs.' Mem. 9–10.) In addition, the FAQ states "'[h]aving a prior autoimmune

15

condition/reaction to a prior vaccine' was *not* considered a contraindication to the COVID-19 vaccination." (*Id.* at 10 (alteration in original) (quoting FAQ 6).)  Defendants argue Plaintiff had a recognized "precaution" to the vaccine, but the "CDC determined that most persons to whom a precaution applied '*can and should* be administered the vaccine,' after conducting a risk assessment with a healthcare provider." (*Id.* at 3 n.2 (citation omitted); Defs.' Reply 2 (citation omitted).)

Second, Defendants argue the Second Circuit has held that the vaccine mandate "'afford[ed] no meaningful discretion' to an employer to grant a non-conforming medical exemption." (Defs.' Mem. 10 (alteration in original) (quoting *We The Patriots I*, 17 F.4th at 289).)  As a result, Defendants were not legally permitted to grant Plaintiff's non-conforming exception request. (*Id.* at 10–11 (citing *Ravenell v. Maimonides Med. Ctr.*, No. 23-CV-2320, 2024 WL 7033233 (E.D.N.Y. Aug. 12, 2024), *report and recommendation adopted*, 2024 WL 7033342 (E.D.N.Y. Aug. 28, 2024)).)  Defendants argue this case is parallel to *Ravenell*, where a radiation therapist submitted a request for medical exemption based on her history of Bell's Palsy, but had "not pleaded facts sufficient to show her entitlement to the medical exemption" within the ACIP standards, and the court found the defendant lacked discretion to grant the plaintiff a medical exemption based on the information she had provided. (*Id.* (quoting *Ravenell*, 2024 WL 7033233, at *15).)  Defendants also argue that Plaintiff's attempt to distinguish *Ravenell* fails because the plaintiff's claims in *Ravenell* were dismissed because she did not qualify for a medical exemption per the ACIP standards, regardless of whether the plaintiff had submitted a doctor's letter. (Defs.' Reply 3 (citing *Ravenell*, 2024 WL 7033233, at *14).)

Third, Defendants contend that Plaintiff's request for exemption would have constituted an undue hardship for Defendants. (Defs.' Mem. 11–14.)  Defendants argue that because Plaintiff did not have a recognized contraindication to the COVID-19 vaccine, Defendants had

16

no discretion to grant her an exemption request, and both the Second Circuit and district courts have held that "it would constitute an undue hardship for a healthcare entity to violate the [vaccine] [m]andate." (*Id.* at 12.)  In addition to a potential legal violation, Defendants also argue they faced health and safety risks in the workplace as a result of unvaccinated employees, and a risk of civil liability to anyone infected by an unvaccinated employee.  (*Id.* at 13.) Defendants also contend that Plaintiff fails to rebut their argument about undue hardship in her opposition brief.  (Defs.' Reply 3–4.)

### ii.    Plaintiff's arguments

Plaintiff argues that she has a medical condition that prevented her from receiving the COVID-19 vaccine, (Pl.'s Opp'n 9, 12), she submitted two letters from a physician supporting medical exemption, (*id.* at 6–8, 13), she was qualified and able to perform the essential functions of her job, with or without a reasonable accommodation, (*id.* at 9), and "Defendants [did not] engage in any sort of interactive process with Plaintiff to determine whether Defendants could reasonably accommodate Plaintiff's accommodation request," (*id.*).  First, Plaintiff argues she qualified for a medical exemption because two physicians "affirmed that receiving the Covid-19 vaccine would be detrimental to the health of Plaintiff based upon a pre-existing condition."  (*Id.* at 3, 12.)  Second, Plaintiff argues that, under the vaccine mandate, personnel with medical exemptions could continue their normal job responsibilities provided that they wore a mask.  (*Id.* at 3.)  Plaintiff also argues that Defendants' reliance on *Ravenell* is misplaced because the plaintiff in that case never submitted a letter from a New York State licensed physician that affirmed or supported an accommodation.  (*Id.* at 13 (citing *Ravenell*, 2024 WL 7033233, at *14).)  Third, Plaintiff argues that the FAQ states that "it would not be an undue hardship for personnel with medical exemptions to continue working with patients or in hospitals or in emergency rooms," (*id.* at 3 (citing FAQ)), and granting a medical exemption to Plaintiff "would

not have imposed an undue hardship because [ ] Defendants would not be violating [s]tate [l]aw"

or be "exposed [ ] to penalties or loss of license," (*id.* at 14).

### iii.    Legal standard and discussion

To establish a *prima facie* case for failure to accommodate under the ADA, a plaintiff

must show:

> (1) his employer is subject to the ADA; (2) he was disabled within
> the meaning of the ADA; (3) he was otherwise qualified to perform
> the essential functions of his job, with or without reasonable
> accommodation; and (4) . . . his employer refused to make a
> reasonable accommodation.

*Tudor v. Whitehall Cent. Sch. Dist.*, 132 F.4th 242, 246 (2d Cir. 2025) (alteration in original)

(emphasis omitted) (quoting *Woolf*, 949 F.3d at 93); *see Lewis*, 2025 WL 2629705, at *2

(quoting *id.*); *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 73 (2d Cir. 2019) (listing four-

pronged test to establish a *prima facie* case of discrimination based on an employer's failure to

accommodate (quoting *McMillan*, 711 F.3d at 125)).  In addition, "the plaintiff must show 'the

connections between (1) the failure to accommodate a disability, (2) the performance

deficiencies, and (3) the adverse employment action.'"  *Clark v. Coca-Cola Beverages Ne., Inc.*,

No. 20-4040, 2022 WL 92060, at *4 (2d Cir. Jan. 10, 2022) (summary order) (emphasis omitted)

(quoting *Natofsky*, 921 F.3d at 352); *see Knope*, 2021 WL 5183536, at *2 (citing *id.*).

"Where the employee's disability is known to the employer, '[t]he ADA envisions an

"interactive process" by which employers and employees work together to assess whether an

employee's disability can be reasonably accommodated.'"  *Stevens v. Rite Aid Corp.*, 851 F.3d

224, 231 (2d Cir. 2017) (alteration in original) (quoting *Jackan v. N.Y. State Dep't of Lab.*, 205

F.3d 562, 566 (2d Cir. 2000)).  A reasonable accommodation "may include 'acquisition or

modification of equipment or devices' and 'other similar accommodations,'" *Laguerre v. Nat'l

Grid USA*, No. 20-3901, 2022 WL 728819, at *4 (2d Cir. Mar. 11, 2022) (summary order)

(quoting 42 U.S.C. § 1211(9)(B)), but the creation of new positions and the elimination of a job's essential function are not reasonable accommodations under the ADA, *Clark*, 2022 WL 92060, at *3. In addition, the "failure to engage in a good faith interactive process is not an independent violation of the ADA." *Sheng v. M&TBank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017); *see Stevens*, 851 F.3d at 231 (same). "That being said, the ADA imposes liability for, *inter alia*, discriminatory refusal to undertake a feasible accommodation, not mere refusal to explore possible accommodations where, in the end, no accommodation was possible." *McBride*, 583 F.3d at 100.

Plaintiff fails to establish a failure to accommodate claim under the ADA because (1) Plaintiff did not have a recognized contraindication to the COVID-19 mandate; and therefore (2) Plaintiff's request for accommodation was unreasonable for Defendants.

First, the Second Circuit has held that Section 2.61 provided that:

> Under the generally accepted medical standards published by ACIP, cognizable contraindications to the COVID-19 vaccines are limited to "[s]evere allergic reaction (e.g., anaphylaxis) after a previous dose or to a component of the COVID-19 vaccine" and "[i]mmediate (within 4 hours) allergic reaction of any severity to a previous dose or known (diagnosed) allergy to a component of the COVID-19 vaccine."

*We The Patriots I*, 17 F.4th at 289 n.28 (alterations in original) (quoting FAQ). The FAQ clarifies that "[h]aving a prior autoimmune condition/reaction to a prior vaccine" is "generally not considered [a] contraindication[] to the COVID-19 vaccination." (FAQ 6.) While Plaintiff provided letters from a physician attesting to her Relapsing Poly disease and that symptoms from her disease "have been triggered from immunizations in the past," (Dr. Gee's First Ltr. 2), including the flu vaccine, (Dr. Gee's Second Ltr.), the letters do not specify a severe allergic reaction to a previous COVID-19 vaccine or a component of the COVID-19 vaccine, and therefore do not establish a contraindication that met the medical exemption standard set forth in

19

the Section 2.61 vaccine mandate. *See Jeter*, 2026 WL 818735, at *7 (holding that the plaintiff failed to establish a failure to accommodate claim because the hospital-defendant determined that the plaintiff "did not qualify for a medical exemption because her purported disability was not one of the narrow contraindications for receiving the COVID-19 vaccine" and therefore, "[the d]efendant could not exempt [the p]laintiff"); *Ravenell*, 2024 WL 7033233, at *15 (finding that the plaintiff, a radiation therapist with Bell's Palsy, failed to establish a claim for failure to accommodate because the plaintiff "ha[d] not pleaded facts sufficient to show her entitlement to the medical exemption" under the narrow contraindications set forth by ACIP standards). Plaintiff argues that *Ravenell* is inapplicable because, unlike Plaintiff in this case, the plaintiff in *Ravenell* failed to submit a certification from a qualifying health professional stating that receipt of the COVID-19 vaccination would have been detrimental to her health due to a preexisting condition. (Pl.'s Opp'n 13 (citing *Ravenell*, 2024 WL 7033233, at *14).) However, the court in *Ravenell* also held that the plaintiff did "not claim[] how her claimed disabilities, namely Bell's Palsy and anxiety, fell within the purview of the ACIP standards which were incorporated by reference into [Section 2.61]." *Ravenell*, 2024 WL 7033233, at *14 (citation omitted). Similar to *Ravenell*, Plaintiff's physician letters state in conclusory fashion that Plaintiff is "medically contraindicated" without explaining how Relapsing Poly falls within ACIP's recognized medical contraindications, *i.e.*, that a COVID-19 vaccine component could cause an adverse reaction in Plaintiff. (*See* Dr. Gee's First Ltr.; Dr. Gee's Second Ltr.)

Plaintiff also argues that the physician letters show that the vaccine was detrimental to her health and that this is sufficient to meet the standard for a medical exemption, (Pl.'s Opp'n 12–13), but Plaintiff overlooks the qualifications to Section 2.61's medical exemption standard which provided that "the medical exemption . . . must be in accordance with generally accepted medical standards" and incorporates by reference the ACIP standards. Section 2.61(d)(1); *We*

20

*The Patriots I*, 17 F.4th at 289 ("[Section 2.61] provides for an objectively defined category of people to whom the vaccine requirement does not apply: employees who present a certification from a physician or certified nurse practitioner attesting that they have a pre-existing health condition that renders the vaccination detrimental to their health, *in accordance with generally accepted medical standards*, such as those published by ACIP." (emphasis added)).  Moreover, the FAQ explicitly states that "[h]aving a prior autoimmune condition/reaction to a prior vaccine" is "generally not considered [a] contraindication[]."  (FAQ 6.)  Other than the letters from Dr. Gee, Plaintiff did not provide evidence supporting that her medical exemption fits within generally accepted medical standards such that Defendants could conclude that Plaintiff met Section 2.61's standard for a medical exemption.  *Cf. Carnett v. TIAA Ins. Co.*, No. 24-CV-9991, 2026 WL 35348, at *5 (S.D.N.Y. Jan. 6, 2026) (denying the defendant's motion to dismiss the plaintiff's failure to accommodate claim because the plaintiff's second accommodation request to the COVID-19 vaccine outlined that the plaintiff's medical condition of Parvo B-19 had a documented risk of developing myocarditis post COVID-19 vaccine, which was "widely reported in peer review literature").  Since Plaintiff's physician letters did not specify that Relapsing Poly was a condition that fit into the recognized contraindications, Defendants could not legally provide a medical exemption to the vaccine requirement because Section 2.61 "afford[ed] no meaningful discretion" to grant a non-conforming medical exemption.  *See We The Patriots I*, 17 F.4th at 289.

Without a medical contraindication to the COVID-19 vaccine, Defendants could not have granted a medical accommodation without violating Section 2.61, *We The Patriots I*, 17 F.4th at 289; *Jeter*, 2026 WL 818735, at *7 ("[The defendant], having determined that [the p]laintiff did not qualify for a medical exemption, would have had to violate New York State law to grant [the p]laintiff's accommodation request."), and therefore, Plaintiff's accommodation request was

21

unreasonable.  *See Jeter*, 2026 WL 818735, at *7 (finding the plaintiff's alternative proposed accommodations of personal protective equipment and testing was unreasonable because it would have placed the defendant in violation of Section 2.61 (citing *Ravenell v. Maimonides Med. Ctr.*, No. 23-CV-2320, 2025 WL 4718902, at *9 (E.D.N.Y. Aug. 8, 2025))); *Williams v. NYC Health & Hosps. Corp.*, No. 24-CV-5467, 2026 WL 350876, at *10 (S.D.N.Y. Feb. 9, 2026) ("Several courts have determined that granting an accommodation [to Section 2.61] that would violate the law constitutes an undue hardship such that refusing such an accommodation is not in violation of the ADA." (citing *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 509–10 (S.D.N.Y. 2023), *aff'd*, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024) (summary order))); *see also Montgomery v. N.Y. Presbyterian Hosp.*, No. 23-CV-9201, 2024 WL 4068786, at *7 (S.D.N.Y. Aug. 13, 2024) (finding that in addition to violating the Section 2.61 mandate, the plaintiff's accommodation request would "expose an unvaccinated healthcare worker to vulnerable patients, creating substantial additional safety and liability risks for both [the defendant-hospital] and its patients"), *report and recommendation adopted*, 2024 WL 4063776 (S.D.N.Y. Sep. 4, 2024), *superseded and report and recommendation adopted*, 2025 WL 240733 (S.D.N.Y. Jan. 17, 2025); *D'Cunha*, 2023 WL 7986441, at *3 (finding that the defendant "could not have granted her religious-exemption request without violating the [COVID-19 vaccine mandate], exposing itself to potential penalties, and thereby suffering an undue hardship").

Plaintiff's only argument in support of her accommodation — that she qualified for a medical exemption — would not constitute undue hardship, and therefore Plaintiff could continue normal job responsibilities with an accommodation.  (*See* Pl.'s Opp'n 14.)  However, this argument is unpersuasive.  As discussed above, Plaintiff did not qualify for a medical exemption because her alleged disability was not one of the narrow contraindications for

22

receiving an exemption to the COVID-19 vaccine mandate, and consequently, Defendants could not exempt Plaintiff, and Plaintiff became unqualified for her position.  A *prima facie* case for failure to accommodate under the ADA requires, *inter alia*, that the plaintiff be "qualified to perform the essential functions of [her] job, with or without reasonable accommodation."  *Tudor*, 132 F.4th at 246 (quoting *Woolf*, 949 F.3d at 93).  Plaintiff fails to state a claim for failure to accommodate because she could not perform her job without qualifying for a medical contraindication.  Having determined that Defendants lacked the discretion to grant Plaintiff a medical exemption because Plaintiff's Relapsing Poly does not qualify as a contraindication under Section 2.61, providing Plaintiff an accommodation would constitute an undue burden. *See Williams*, 2026 WL 350876, at *10 ("Several courts have determined that granting an accommodation [to Section 2.61] that would violate the law constitutes an undue hardship such that refusing such an accommodation is not in violation of the ADA." (citing *Algarin*, 678 F. Supp. 3d at 509–10)).  Accordingly, the Court therefore dismisses Plaintiff's ADA failure to accommodate claim.

### d.    Plaintiff fails to state a claim for retaliation in violation of the ADA

Defendants argue, first, that Plaintiff's Amended Complaint fails to allege plausible causation between any alleged protected activity and termination.  (Defs.' Mem. 14–17.) Defendants contend that Plaintiff's termination "was nothing more than [Defendants'] enforcement of its pre-existing policy and compliance with [Section 2.61]," and this is not a plausible claim for retaliation.  (*Id.* at 16.)  Second, Defendants contend that Plaintiff cannot "bootstrap[]" her retaliation claim onto her failure to accommodate claim by asserting the retaliation claim based on the same underlying conduct — failure to make an accommodation. (*Id.* at 15.)  Third, Defendants argue that Plaintiff fails to state a plausible claim for retaliation because her retaliation claim is "simply a reiteration of her claim for disability discrimination."

23

(*Id.*)  Fourth, Defendants argue that Plaintiff abandoned her retaliation claim because her opposition fails to oppose their arguments.  (Defs.' Reply 4.)

Plaintiff does not address her ADA retaliation claim in her opposition brief, and only presents arguments regarding her claims for failure to accommodate.  (*See generally* Pl.'s Opp'n.)  The Court nevertheless addresses this claim, although abandoned by Plaintiff.

"To state an ADA retaliation claim, an employee 'must show that [s]he engaged in a protected activity, that [s]he suffered an adverse employment action, and that a causal connection exists between that protected activity and the adverse employment action.'"  *Johnson v. Maximus Servs. LLC*, No. 23-7672, 2025 WL 1561819, at *3 (2d Cir. June 3, 2025) (summary order) (alterations in original) (quoting *Fox*, 918 F.3d at 72–73); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 23-466, 2024 WL 3289475, at *2 (2d Cir. July 3, 2024) (summary order) (quoting same); *Ibela v. Allied Universal*, No. 21-1995, 2022 WL 1418886, at *2 (2d Cir. May 5, 2022) (summary order) (quoting same); *Clark*, 2022 WL 92060, at *5 (quoting same); *see Norman v. NYU Langone Health Sys.*, No. 20-3624, 2021 WL 5986999, at *4 (2d Cir. Dec. 17, 2021) (summary order) (quoting *Natofsky*, 921 F.3d at 353).  "A plaintiff bears only a minimal burden in making this *prima facie* showing."  *Perez v. City of New York*, 843 F. App'x 406, 407 (2d Cir. 2021) (first citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010); and then citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).

"Activities protected by the ADA include complaints of ADA discrimination, including complaints . . . that the employer's actions violated the ADA, and requests for reasonable accommodations."  *Flieger v. E. Suffolk BOCES*, 693 F. App'x 14, 18 (2d Cir. 2017); *see Frantti v. New York*, 850 F. App'x 17, 21 (2d Cir. 2021) ("[A]ttempts to assert [ ] rights against discrimination are protected activities." (alterations in original) (quoting *Treglia*, 313 F.3d at 720)); *Treglia*, 313 F.3d at 720 ("[A]ttempts to assert . . . rights against discrimination are

24

protected activities . . . ."); *see also Summa v. Hofstra Univ.*, 708 F.3d 115, 126–27 (2d Cir. 2013) (finding that the plaintiff's "complaints to public safety and the school's Equality Officer" sufficed to establish that plaintiff engaged in a protected activity). "A complaint of discrimination constitutes 'protected activity' only if (1) the plaintiff holds a good-faith belief that he suffered discrimination because of a protected characteristic and (2) that belief is reasonable." *Jagmohan v. Long Island R.R. Co.*, 622 F. App'x 61, 63–64 (2d Cir. 2015) (citing *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)); *see Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024) ("An employee can satisfy the protected activity requirement even if his condition was not a disability within the meaning of the ADA so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated the ADA." (internal quotation marks and citation omitted)). "Requesting a reasonable accommodation of a disability is an ADA-protected activity." *Rodriguez v. Atria Senior Living Grp., Inc.*, 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012) (citing *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002)); *see Ibela*, 2022 WL 1418886, at *2 ("Seeking a reasonable accommodation constitutes protected activity under the ADA."); *Frantti*, 850 F. App'x at 21 (quoting *Weixel*, 287 F.3d at 149); *Weixel*, 287 F.3d at 149 ("[The p]laintiffs . . . allege that they were seeking reasonable accommodation [on the basis of] disability — which constitutes protected activity under [the ADA].").

To state a claim of retaliation under the ADA, a plaintiff must show "that a causal connection existed between the protected activity and the adverse action." *Baum v. Rockland Cnty.*, 161 F. App'x 62, 64 (2d Cir. 2005) (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999)); *see Johnson*, 2024 WL 3289475, at *2 (quoting *Fox*, 918 F.3d at 72–73). To prove a causal connection between the protected activity and the adverse

25

action, "a plaintiff must prove 'that "but for" the [protected activity], the adverse action would not have been taken." *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (quoting *Natofsky*, 921 F.3d at 352); *Philbert v. N.Y.C. Dep't of Educ.*, No. 24-804, 2025 WL 3251187, at *1 (2d Cir. Nov. 21, 2025) (summary order) (quoting *Tafolla*, 80 F.4th at 125).  A causal connection in retaliation claims can be shown: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky*, 921 F.3d at 353 (quoting *Littlejohn*, 795 F.3d at 319); *Tafolla*, 80 F.4th at 125 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).  The plaintiff must provide "sufficient evidence of a causal nexus between [her] protected activity and the alleged adverse employment actions [s]he suffered."  *Clark*, 2022 WL 92060, at *5 (quoting *Fox*, 918 F.3d at 73).  "A plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action."  *Tafolla*, 80 F.4th at 125–26 (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010)); *see Ibela*, 2022 WL 1418886, at *2 ("[A] plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." (quoting *Gorman-Bakos v. Cornell Co-Op Ext. of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001))); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001))); *see also Ibela*, 2022 WL 1418886, at *2 (finding that a gap of two months between a protected activity and adverse action was sufficient to

26

plausibly allege causation); *Pistello v. Bd. of Educ.*, 808 F. App'x 19, 21–22 (2d Cir. 2020) (considering dates of protected activities in relation to adverse employment actions and permitting the plaintiff's ADA retaliation claim to proceed).

While requesting reasonable accommodation of a disability is an ADA-protected activity, *see Rodriguez*, 887 F. Supp. 2d at 512, Plaintiff has provided no evidence to support that a causal connection exists between her request for accommodation and her termination.  Plaintiff's only allegations in support of her retaliation claim are two conclusory statements that Defendants retaliated against her "for complaining about discrimination," (Am. Compl. ¶ 38), and "in the terms and conditions of her employment, on the basis of her disability," (*id.* ¶ 64).  However, Defendants' vaccine mandate stating continued employment was contingent upon vaccination predated Plaintiff's accommodation request.  Since Plaintiff provides no contrary evidence to show that her termination was nothing more than Defendants' enforcement of their vaccine policy, Plaintiff cannot support a retaliation claim.  *See Johnson*, 2024 WL 3289475, at *2 (affirming district court dismissal of ADA retaliation claim because the plaintiff's "protected activity occurred only after [the defendant] implemented its COVID-19 employment policies" (emphasis omitted)); *Kosiba*, 2024 WL 3024652, at *2 (affirming district court dismissal of ADA retaliation claim because the plaintiff failed to demonstrate a causal connection between his opposition to the defendant's COVID-19 vaccination policy and his termination since the policy predated his opposition and applied to all employees); *Sharikov*, 103 F.4th at 171 (affirming dismissal of ADA retaliation claim because "rather than show [the plaintiff] was terminated because of his protected activity [applying for a COVID-19 vaccination exemption], the allegations in the [c]omplaint make clear that he was fired because of his failure to comply with the company-wide vaccine policy.  Because the policy applied to all employees regardless of whether they had engaged in protected activity, [the plaintiff] has not plausibly pleaded a

27

connection between his invocations of the ADA and his termination."); *Evans v. N.Y.C. Dep't of Educ.*, No. 22-CV-7901, 2023 WL 8034449, at *9 (S.D.N.Y. Nov. 20, 2023) (dismissing ADA retaliation claim where the plaintiff failed to show a "causal connection between" his termination and protected activity because the "COVID policy applied to all employees and [the plaintiff's] own pleadings show[ed] he was disciplined as a consequence of the refusal to comply with the policy, rather than as retaliation for opposition to it"), *aff'd*, No. 23-8119, 2024 WL 4501963 (2d Cir. Oct. 16, 2024) (summary order).

In addition, Plaintiff's retaliation claim also fails because it is entirely premised on Defendants' alleged denial of reasonable accommodation.  Courts in this Circuit have held that this allegation supports a failure to accommodate claim, and not a claim of retaliation.  *Jusino v. N.Y.C. Dep't of Educ.*, No. 22-CV-853, 2026 WL 879237, at *8 (E.D.N.Y. Mar. 31, 2026) ("[F]ailure to make an accommodation . . . simply gives rise to a failure to a accommodate [discrimination] claim and cannot be boostrapped into a viable disability retaliation claim." (second and third alterations in original) (internal citation and quotation marks omitted) (quoting *Perez v. N.Y. Presbyterian/Weill Cornell Med. Ctr.*, No. 23-CV-6152, 2024 WL 1514216, at *9 (S.D.N.Y. Apr. 8, 2024))); *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651, 2020 WL 3403191, at *11 (E.D.N.Y. June 19, 2020) (quoting *Missick v. City of New York*, 707 F. Supp. 2d 336, 356 (E.D.N.Y. 2010)) (same).

Finally, like her disability discrimination claim, Plaintiff abandoned her retaliation claim by failing to address Defendants' arguments in response to the motion to dismiss.  *Linares*, 2025 WL 2720789, at *5 (finding the plaintiff abandoned her claim for failing to address the defendant's motion to dismiss arguments).

The Court therefore dismisses Plaintiff's ADA retaliation claim.

### e.    State law claims

Because the Court dismisses Plaintiff's ADA claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims for disability discrimination, failure to accommodate, and retaliation under the NSYHRL.  *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim [if]. . . the district court has dismissed all claims over which it has original jurisdiction[.]"); *see also One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims . . . ."); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3))).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)); *Chinniah v. Fed. Energy Regul. Comm'n*, 62 F.4th 700, 703 (2d Cir. 2023) (quoting *Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d at 727) (same); *see Haran v. Orange Bus. Servs., Inc.*, 160 F.4th 51, 60 (2d Cir. 2025) (affirming district court decision declining to exercise supplemental jurisdiction over the NYCHRL claim after dismissing FMLA claims); *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 187 (2d Cir. 2025) (upholding dismissal of state law claims after the district court dismissed the Title VII employment discrimination claims based on the defendant's enforcement of the COVID-19 vaccine policy); *Blodgett v. 22 S. St. Operations, LLC*, 828 F. App'x 1, 5 (2d Cir. 2020) (affirming district court's

29

decision declining to exercise supplemental jurisdiction over state law claims after dismissing plaintiff's ADA claims).

The Court also declines to exercise supplemental jurisdiction because the NYSHRL claims would require "unnecessarily delving" into an unresolved issue of state law.  *See Norman*, 2021 WL 5986999, at \*6 (stating that the Second Circuit has "cautioned against unnecessarily delving into non-federal legal issues in the absence of any continuing basis for federal question jurisdiction" (quoting *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001))). Historically, "claim[s] of disability discrimination under the [NYSHRL] . . . [were] governed by the same legal standards as govern federal ADA claims."  *Tafolla*, 80 F.4th at 119 (second alteration in original) (quoting *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006)); *see Lehey v. Northwell Health, Inc.*, No. 23-CV-4708, 2024 WL 1703697, at \*3 (S.D.N.Y. Apr. 14, 2024) (citing same), *reconsideration denied*, 2024 WL 2882941 (S.D.N.Y. June 7, 2024). However, the NYSHRL "was amended in 2019 to 'be construed liberally for the accomplishment of the remedial purposes thereof,' irrespective of the standards courts have applied to federal civil rights laws," and "is interpreted 'to align with . . . the more liberal pleading standard' applicable to the New York City Human Rights Law ('NYCHRL')."[5]  *Flanagan v. Girl Scouts of Suffolk Cnty., Inc.*, No. 23-7900, 2025 WL 1501751, at \*3 (2d Cir. May 27, 2025) (summary order) (alteration in original) (quoting *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 123 (2d Cir. 2024) (citation and internal quotation marks omitted)); *see* N.Y. Exec. Law § 300 (requiring that the NYSHRL be

---

[5]  The amendments apply to claims accruing after August 12, 2019.  *See Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 n.9 (2d Cir. 2025), and therefore apply to Plaintiff's claims as the events that give rise to her allegations occurred in 2021.  *See Flanagan v. Girl Scouts of Suffolk Cnty., Inc.*, No. 23-7900, 2025 WL 1501751, at \*3 (2d Cir. May 27, 2025) (summary order) (applying August 12, 2019 effective date); *Golston-Green v. City of New York*, 123 N.Y.S.3d 656, 665 n.1 (App. Div. 2020) (same).

construed "liberally for the accomplishment of the remedial purposes thereof"); *Belanger v. N.Y. Univ.*, No. 21-CV-1644, 2025 WL 963308, at *21 (S.D.N.Y. Mar. 31, 2025) (discussing the more liberal post-amendment standard under the NYSHRL); *Acosta v. Kennedy Children's Ctr.*, No. 24-CV-3358, 2025 WL 70141, at *8 n.6 (S.D.N.Y. Jan. 10, 2025) (same). New York courts have not definitively resolved the question "of how this amendment changes standards of liability under the NYSHRL," *Cooper v. Franklin Templeton Invs.*, No. 22-2763, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023) (summary order), but the Second Circuit has noted that the New York Court of Appeals has "constru[ed] NYSHRL and NYCHRL claims together," *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 n.9 (2d Cir. 2025), in "[a]pplying this mandate to interpret these laws broadly," *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 451 (Ct. App. 2024), and lower courts have treated NYSHRL and NYCHRL claims as coextensive. *See Wright v. White Plains Hosp. Med. Ctr.*, 232 N.Y.S.3d 594, 596 (App. Div. 2025) (analyzing the NYSHRL and NYCHRL claims together under both the *McDonnell Douglas* framework traditionally applied to NYSHRL claims and the "newer mixed-motive framework" typically applied to NYCHRL claims (citing *Syeed*, 41 N.Y.3d at 452)); *Hunold v. City of New York*, 216 N.Y.S.3d 550, 550 n.4 (Sup. Ct. 2024) ("Although post-amendment case law is limited, courts interpreting discrimination claims under the NYSHRL have begun to turn to interpretations of the NYCHRL for guidance." (citations omitted)); *see also Herrera v. Syracuse Univ.*, No. 24-CV-245, 2025 WL 874734, at *15 (N.D.N.Y. Mar. 20, 2025) (noting that "New York state courts have recently treated [NYSHRL and NYCHRL claims] as coextensive" (citing *Syeed*, 41 N.Y.3d at 452)). Some courts in this Circuit, including this Court, *see Passante v. Cambium Learning Grp.*, No. 23-CV-4060, 2024 WL 4171026, at *5–7, *9–10 (E.D.N.Y. Sep. 12, 2024), "have interpreted the amendment as rendering the standard for claims closer to the standard of the NYCHRL." *Cooper*, 2023 WL 3882977, at *3 (citation omitted); *Desiderio*, 2025 WL

31

1285278, at *9 (collecting cases); *see also Acosta*, 2025 WL 70141, at *8 n.6 (explaining that "case law . . . has not definitively resolved whether the effect of the 2019 amendment is to make the NYSHRL's standard *identical* to that of the NYCHRL — or merely closer to it"). Although the Second Circuit has not yet "resolve[d] the impact of these amendments," *Cooper*, 2023 WL 3882977, at *3, recent summary orders in the Second Circuit analyzed post-amendment claims under the NYSHRL and the NYCHRL together. *See Brown v. Montefiore Health Sys., Inc.*, No. 24-3078, 2025 WL 2985389, at *2 n.4 (2d Cir. Oct. 23, 2025) (summary order) (stating the 2019 amendment "align[ed] the NYSHRL with the [NYCHRL]'s more liberal pleading standard."); *Gehlaut v. N.Y.C. Dep't of Educ.*, No. 24-1741, 2025 WL 2586770, at *2 (2d Cir. Sep. 8, 2025) (summary order) (applying "NYCHRL's more liberal pleading standard" in analyzing the plaintiff's NYSHRL employment discrimination claim (quoting *Qorrolli*, 124 F.4th at 122–23)); *Flanagan*, 2025 WL 1501751, at *3 (applying "'more liberal pleading standard' applicable to" NYCHRL claims to a NYSHRL discrimination claim (quoting *Qorrolli*, 124 F.4th at 123)); *Valerio v. Metro. Transp. Auth.*, No. 24-1614, 2025 WL 686028, at *3 (2d Cir. Mar. 4, 2025) (summary order) ("We thus discuss both [the NYSHRL and NYCHRL] claims together while recognizing that they are separate and independent claims." (citation omitted)); *Knight v. MTA - N.Y.C. Transit*, No. 19-CV-1428, 2026 WL 875339, at *3 (E.D.N.Y. Mar. 31, 2026) (applying *Valerio* and addressing NYSHRL and NYCHRL claims "together[,] while recognizing that they are separate and independent claims" (alteration in original) (quoting *Valerio*, 2025 WL 686028, at *3)).

"[I]n the absence of any remaining federal claims, the appropriate analytic framework to be applied to discrimination claims based on a 'disability' as defined by New York state and municipal law is a question best left to the courts of the State of New York." *Norman*, 2021 WL 5986999, at *6 (alteration in original) (quoting *Giordano*, 274 F.3d at 754); *see Sorel*, 2026 WL

879415, at *7 n.9 (declining to exercise supplemental jurisdiction over state law claims after dismissing ADA claims); *Jeter*, 2026 WL 818735, at *9–10 (dismissing NYSHRL and NYCHRL state law claims after dismissing the plaintiff's Title VII and ADA claims); *Asemota v. City of New York*, No. 24-CV-7793, 2025 WL 2662301, at *13 (S.D.N.Y. Sep. 16, 2025) (declining to exercise supplemental jurisdiction over NYSHRL claims due to unsettled questions of state law with respect to pleading standards and whether NYSHRL claims should be construed like the NYCHRL (citing *Valerio*, 2025 WL 686028, at *3)); *see also Cruz*, 2025 WL 551809, at *15 (granting summary judgment on federal disability discrimination claim and declining to exercise supplemental jurisdiction over "remaining . . . NYSHRL and NYCHRL [claims], which are better suited for the state courts of New York"); *Nikolakopoulos v. Macy's Inc.*, No. 20-CV-1641, 2022 WL 3903595, at *27 (S.D.N.Y. Aug. 30, 2022) (declining to exercise supplemental jurisdiction over the plaintiff's NYSHRL and NYCHRL claims after dismissing ADA and FMLA claims on summary judgment because the claims "implicate different and at times uncertain legal frameworks and standards" and explaining the NYSHRL amendments as an example of how the "legal frameworks" of the claim "diverge, often substantially, from those governing [the federal] claims" (alteration in original) (quoting *Williams* v. *Geiger*, 447 F. Supp. 3d 68, 88 (S.D.N.Y. 2020))); *Fitzgerald v. We Co.*, No. 20-CV-5260, 2022 WL 952963, at *10 (S.D.N.Y. Mar. 30, 2022) (declining to exercise supplemental jurisdiction over NYSHRL and NYCHRL claims after granting summary judgment on federal ADA, FMLA, and Title VII claims because they "employ a different, more liberal substantive standard in resolving both gender- and disability-based discrimination, retaliation, and hostile work environment claims"); *Brantman v. Fortistar Cap. Inc.*, No. 15-CV-4774, 2017 WL 3172864, at *12 (S.D.N.Y. July 22, 2017) (declining exercise of supplemental jurisdiction over NYHSRL claims following grant of summary judgment on ADA and Title VII claims "[i]n the interest of comity" (citation omitted)).

33

Accordingly, the Court dismisses Plaintiff's NYSHRL claims without prejudice.

### f.    Leave to amend the Amended Complaint

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.'"  *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)); *see MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) ("A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." (internal quotation marks and citations omitted)); *Dalewitz v. Procter & Gamble Co.*, No. 22-CV-7323, 2025 WL 764023, at *2 (S.D.N.Y. Mar. 11, 2025) ("[A]bsent a showing of prejudice or bad faith, practice in this Circuit is to grant a motion to amend." (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993))).

The Court denies Plaintiff leave to amend the Amended Complaint as it relates to her ADA claims for disability discrimination, failure to accommodate, and retaliation.  First, Plaintiff has already filed an Amended Complaint in response to Defendants' first motion to dismiss, and Plaintiff does not request leave to amend or indicate there are additional facts that could cure the legal deficiencies identified by the Court in this Memorandum and Order.  *See Perez*, 2024 WL 1514216, at *10 (denying leave to amend ADA claims for disability discrimination, failure to accommodate, and retaliation because the plaintiff declined to fix deficiencies to her complaint after notice of those deficiencies in the defendant's initial motion to dismiss and the plaintiff did

34

not ask to amend or "otherwise suggest[] that she is in possession of facts that would cure the deficiencies identified in this opinion").  In addition, Plaintiff abandoned her ADA claims for disability discrimination and retaliation by failing to address Defendants' arguments in their motion to dismiss.  *See Chipkin v. Better Packages, Inc.*, No. 24-CV-1435, 2025 WL 2319994, at *6 (D. Conn. Aug. 12, 2025) (denying leave to amend where the plaintiff failed to defend his ADA claims); *HAHA Glob., Inc. v. Barclays*, No. 19-CV-4749, 2020 WL 13882092, at *9 (S.D.N.Y. July 9, 2020) (denying leave to amend federal claims because the plaintiff abandoned them), *report and recommendation adopted*, 2020 WL 4702690 (S.D.N.Y. Aug. 13, 2020).

Second, Plaintiff has failed to allege sufficient facts to support an inference of discrimination or causation between her alleged disability and COVID-19 vaccination medical exemption request and her termination.  Her sole allegation of discriminatory conduct relates to the denial of a medical exemption, which the Court has determined Defendants lacked the discretion to grant.  Construing the Amended Complaint liberally, Plaintiff's allegations do not suggest that her claims are merely "inadequately or inartfully pleaded" but rather that their deficiencies are "substantive."  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  As a result, the Court declines to permit Plaintiff to file a second amended complaint.  *See Fernandez v. Scanpan USA, Inc.*, No. 25-CV-1849, 2025 WL 2774113, at *3 (S.D.N.Y. Sep. 29, 2025) (declining the plaintiff leave to amend the complaint to cure deficiencies in his ADA claim because "any further amendment would be futile"); *see Muslim v. Sagamore Children's Psychiatric Ctr.*, No. 22-CV-7850, 2024 WL 3431959, at *6 (E.D.N.Y. July 15, 2024) (dismissing with prejudice the plaintiff's Title VII and NYSHRL religious discrimination claims given the undue hardship the employer would face if it granted the plaintiff's requested exemption from Section 2.61); *Conde v. Mid Hudson Reg'l Hosp. Med. Ctr.*, No. 22-CV-3085, 2024 WL 168282, at *8 (S.D.N.Y. Jan. 12, 2024) (same); *Moore v. Montefiore Med. Ctr.*, No.

35

22-CV-10242, 2023 WL 7280476, at \*8 (S.D.N.Y. Nov. 3, 2023) (denying *pro se* plaintiff leave to amend Title VII discrimination claims because they would ultimately fail due to the undue hardship the defendant would face in granting a Section 2.61 exemption).

Accordingly, the Court declines to grant Plaintiff leave to amend her ADA claims.

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss, dismissing with prejudice Plaintiff's ADA claims for (1) disability discrimination, (2) failure to accommodate, and (3) retaliation.  The Court declines to exercise jurisdiction over Plaintiff's NYSHRL claims for (1) disability discrimination, (2) failure to accommodate, and (3) retaliation and dismisses these claims without prejudice.

Dated:  May 26, 2026
           Brooklyn, New York

                                   SO ORDERED:


                                   _____s/ MKB_____
                                   MARGO K. BRODIE
                                   United States District Judge

36